# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **CHRISTOPHER LYNN THOMPSON,** individually and on behalf of all persons similarly situated, | : : : : : | **Civil Action No.: 2:13-cv-00266-CRE** |
| **Plaintiff,** | : | |
| **v.** | : : | |
| **PEAK ENERGY SERVICES USA, INC.** | : : | |
| **Defendant.** | : : | |

## SETTLEMENT AGREEMENT AND RELEASE

1.     This Settlement Agreement and Release (the "Settlement Agreement," "Settlement" or "Agreement") is entered into between Plaintiff Christopher Lynn Thompson and the Settlement Classes defined below, Robert Proctor, Dennis Proctor, Allan Hackett, Sr., and Jake Wilson, and Defendant Clean Harbors Surface Rentals, USA (f/k/a Peak Energy Services USA, Inc.) ("Defendant"), subject to the approval of the Court.

## RECITALS

2.     On February 20, 2013, Christopher Lynn Thompson ("Thompson") commenced this action by filing a Complaint in the United States District Court for the Western District of Pennsylvania captioned as *Christopher Lynn Thompson v. Peak Energy Services USA, Inc.*, No. 2:13-cv-00266-CRE (W.D. Pa.) (the "*Thompson* Action").

3.     On June 28, 2013, Robert Proctor, Dennis Proctor, Allan Hackett, Sr., and Jake Wilson (the "*Proctor* Plaintiffs") commenced a separate action by filing a Complaint in the United States District Court for the Middle District of Pennsylvania, which was subsequently amended, transferred to the Western District of Pennsylvania, consolidated with the *Thompson* Action, and captioned as *Proctor v. Peak Energy Services USA, Inc.*, No. 2:13-cv-01520-CRE (W.D. Pa.) (the "*Proctor* Action").

4.     Thompson, individually and on behalf of all persons similarly situated, and the *Proctor* Plaintiffs assert claims against Defendant in the form of: (1) a failure to pay overtime wages under the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"); (2) a failure to pay overtime wages under the Pennsylvania Minimum Wage Act of 1968, 43 P. S. §§ 333.101, *et seq.* ("PMWA"); (3) an intentional failure to pay wages under the Pennsylvania Wage Payment and Collection Law, 43 Pa C. S. § 260.1 ("PWPCL"); and (4) a common law claim of unjust enrichment.

5.     On August 22, 2013, the parties participated in mediation in Boston, Massachusetts before an experienced mediator, Judge Isaac Borenstein (ret.).  In connection with

this mediation and the parties' agreed alternative dispute resolution ("ADR") process, Defendant provided Thompson with voluminous electronic and hardcopy payroll records, timesheets, and applicable policies, which Plaintiffs reviewed and analyzed. The Parties, however, were unable to resolve the Actions (as defined below) at that time.

6.      In October 2013, after the Court conditionally certified a collective action under the FLSA, notice was mailed to all current and former Solids Control Technician employees of Defendant who worked for Defendant between February 20, 2010 and June 10, 2011, notifying them of the *Thompson* Action and their right to opt into the lawsuit and assert claims under the FLSA against Defendant. One hundred and forty-one individuals, including Thompson and the *Proctor* Plaintiffs, ultimately opted in to the lawsuit by filing an Opt-In Consent Form in either the *Thompson* or *Proctor* Actions. Defendant also identified 38 individuals who are members of the Pennsylvania Class asserted in the Complaint in the *Thompson* Action who did not file Opt-In Consent Forms to join the lawsuit.

7.      On April 22, 2014, the Parties participated in mediation in Boston, Massachusetts before an experienced mediator, Mark Irvings. As a result of the mediation, and subsequent arms' length negotiations that occurred between the Parties, the Parties have agreed to settle these Actions (as defined below) according to the terms of this Settlement Agreement.

8.      Plaintiffs (defined below), through their counsel, have made a thorough and independent investigation of the facts and law relating to the controversies between the Parties, including, among other things, through depositions and the review of documents and interrogatory answers produced by Defendant. In agreeing to this Settlement Agreement, Plaintiffs and their counsel have considered: (a) the facts developed during discovery in the Actions and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of their claims against Defendant; (c) the desirability of permitting the Settlement to be consummated according to the terms of this Settlement Agreement; and (d) the conclusion of Plaintiffs and their counsel that the terms and conditions of this Settlement are fair, reasonable, adequate, and that it is in the best interests of Plaintiffs and the FLSA and Pennsylvania Settlement Class Members to settle their claims against Defendant pursuant to the terms set forth herein.

9.      Defendant denies the material allegations of the *Thompson* and *Proctor* Complaints, including all allegations of wrongdoing, fault, liability, or damage to Thompson, the *Proctor* Plaintiffs and the FLSA and Pennsylvania Class Members, denies that it engaged in any wrongdoing, denies that it committed any violation of law, denies that it acted improperly in any way, believes that it acted properly at all times, and believes the Actions have no merit, but is entering into this Settlement Agreement solely because the proposed Settlement Agreement will eliminate the burden, risk and expense of further litigation. Except for purposes of this settlement, neither this Settlement Agreement, nor any document referred to herein, nor any action taken to carry out this Settlement Agreement, may be in any way used as an admission, concession or indication by or against Defendant of any fault, wrongdoing or liability whatsoever, including any concession that certification of a class other than for the purposes of this settlement would be appropriate in this or any other case.

10.    The Parties recognize that notice to the FLSA and Pennsylvania Settlement Class Members of the material terms of this Settlement Agreement, as well as Court approval of this Settlement Agreement, are required to effectuate the Settlement Agreement, and that the Settlement Agreement will not become operative until the Court grants final approval of it and the Settlement Agreement becomes effective.

11.    The Parties stipulate and agree that, for settlement purposes only, the requisites for establishing collective action certification under the FLSA pursuant to 29 U.S.C. § 216(b) with respect to the FLSA Settlement Class Members, and class certification pursuant to FED. R. CIV. P. 23 with respect to the Pennsylvania Settlement Class Members, have been and are met. Should this Settlement Agreement not become final, such stipulation to class certification as part of the Settlement Agreement shall become null and void and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not certification would be appropriate in a non-settlement context.  Defendant expressly reserves its right to oppose class certification should this settlement not become final.

12.    In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party to the other, IT IS HEREBY AGREED, by and between the undersigned, subject to the final approval by the Court and the other conditions set forth herein, that Thompson's, the *Proctor* Plaintiffs' and the FLSA and Pennsylvania Class Members' claims against Defendant shall be settled, compromised, and dismissed, on the merits and with prejudice, and that the Released Claims (as defined below) shall be finally and fully compromised, settled and dismissed as to the Releasees (as defined below), in the manner and upon the terms and conditions set forth below.

## TERMS AND CONDITIONS

13.    **Defined Terms.**  Capitalized terms used in this Settlement Agreement shall have the meanings ascribed to them herein.  In addition, the following capitalized terms shall have the meanings specified below:

a.    "Thompson" means Christopher Lynn Thompson.

b.    "*Proctor* Plaintiffs" means Robert Proctor, Dennis Proctor, Allan Hackett, Sr., and Jake Wilson.

c.    "Action" collectively means:

i.    The "*Thompson* Action," captioned *Christopher Lynn Thompson v. Peak Energy Services USA, Inc.*, No. 2:13-cv-00266-CRE (W.D. Pa.), pending in the United States District Court for the Western District of Pennsylvania; and

ii.    The "*Proctor* Action," captioned *Proctor v. Peak Energy Services USA, Inc.*, No. 2:13-cv-01520-CRE (W.D. Pa.), which has been consolidated with the *Thompson Action*, and is currently pending in the United States District Court for the Western District of Pennsylvania.

d.      "CAFA Notice" means the notice to be sent by Defendant to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b), within five (5) business days after the submission of this Settlement Agreement to the Court.  A copy of the CAFA Notice shall be provided to Class Counsel.

e.      "Claim Form" means the form as approved by the Court, provided for Pennsylvania Settlement Class Members who are not also FLSA Settlement Class Members to submit in order to obtain a Settlement Award under this Settlement Agreement, a copy of which is attached hereto as Exhibit B.

f.      "Class Counsel" means Berger & Montague, P.C. and Hardin & Hughes, LLP.

g.      "Class Periods" collectively mean:

i.      The "Pennsylvania Class Period," which means the period from February 20, 2009 through June 10, 2011; and

ii.      The "FLSA Class Period," which means the period between 1) the later of either (a) February 20, 2010 or (b) 3 years and 147 days (1242 days) prior to the earlier of the date the FLSA Plaintiff filed his or her respective Opt-In Consent Form with the Court or the date the Opt-In Consent Form was stamped as received by the Notice Administrator, and 2) June 10, 2011.

h.      "Complaint" collectively means the complaint filed in the *Thompson* Action and the amended complaint filed in the *Proctor* Action.

i.      "Court" means the United States District Court for the Western District of Pennsylvania.

j.      "Defendant" means Clean Harbors Surface Rentals, USA (f/k/a Peak Energy Services USA, Inc.).

k.      "Defendant's Counsel" means Jackson Lewis P.C.

l.      "Eligible Class Member" means: a) all FLSA Settlement Class Members; and b) all Pennsylvania Settlement Class Members who: (i) do not opt out of the Pennsylvania Settlement Class; and (ii) for Pennsylvania Settlement Class Members who are not also FLSA Settlement Class Members, those who complete and return a timely Claim Form.

m.      "Effective Date" means the first business day following the Court's final approval of the Settlement if there are no objectors, or if there are objectors, means the first business day after the Court's final approval of the Settlement is finally affirmed on appeal and/or is no longer subject to appeal or certiorari, and the time for any petition for reargument, appeal, or review, by certiorari or otherwise, has expired (i.e., thirty days from final approval).

n.      "Fee Award" means the award of attorneys' fees that the Court authorizes

4

to be paid to Class Counsel for the services they rendered to Plaintiffs and the Class in the Action.

        o.     "Final Approval" or "Final Approval Order" means the Court's Final Approval Order entering judgment and awarding any attorneys' fees, costs and service awards.

        p.     "Final Approval Hearing" means the hearing to be held before the Court to consider the Final Approval of the Settlement.

        q.     "FLSA Settlement Class" means all persons who opted-in to this Action as an FLSA Opt-In Plaintiff, including Thompson and the *Proctor* Plaintiffs.  A member of the FLSA Settlement Class shall be referred to herein as a "FLSA Settlement Class Member."

        r.     "Gross Settlement Amount" means the maximum amount that Defendant shall pay in exchange for the release of all Released Claims by Plaintiffs, FLSA Settlement Class Members and Pennsylvania Settlement Class Members, which is the sum of One Million, Eight Hundred Thousand Dollars and Zero Cents ($1,800,000.00), excluding the employers' share of FICA and FUTA payroll taxes.  In no event shall the Gross Settlement Amount exceed this sum, plus the employers' share of FICA and FUTA payroll taxes on the amounts paid to Eligible Class Members.

        s.     "Net Settlement Amount" means the Gross Settlement Amount less: (i) Ten Thousand Dollars ($10,000.00) as a Service Award for the Named Plaintiff Thompson who has participated extensively in this case, for his efforts in bringing and prosecuting this matter and in exchange for his additional Released Claims executed in favor of Defendant as set forth in paragraph 14(a); (ii) the payment of attorneys' fees to Class Counsel, not to exceed Six Hundred Thousand Dollars ($600,000.00) (which is one third of the Gross Settlement Amount), plus the payment of out-of-pocket costs incurred by Class Counsel, which currently are Thirty-Nine Thousand Three Hundred and Twenty-Five Dollars ($39,325.00); and (iii) a maximum of Fifteen Thousand Five Hundred Dollars ($15,500) for the Settlement Administrator's estimated costs related to administering this Settlement.  The parties acknowledge that all of these amounts are subject to the Court's approval.

        t.     "Notice Deadline" means the date forty-five (45) days after the Settlement Notices and Claim Form are initially mailed by the Settlement Administrator to the Pennsylvania Settlement Class, in which they may submit their executed Claim Form to receive a Settlement Award under this Settlement Agreement, object to or opt-out of the Settlement.  FLSA Settlement Class Members are not required to resubmit a Claim Form, but will receive the Class Notice.

        u.     "Parties" means Thompson, the *Proctor* Plaintiffs, and Defendant.

        v.     "Pennsylvania Settlement Class" means all individuals who were employed by Peak at any time between February 20, 2009 and June 10, 2011 as a Solids Control Technician within the Commonwealth of Pennsylvania.  A member of the Pennsylvania Settlement Class shall be referred to herein as a "Pennsylvania Settlement Class Member." Defendant has identified 38 Pennsylvania Settlement Class Members who are not FLSA Settlement Class Members.  A list of all such individuals, including their name, last known

address, last known telephone number, social security number, and dates and work weeks that each individual worked for Defendant, will be provided to Class Counsel and the Settlement Administrator within five (5) business days after Preliminary Approval.

w.   "Plaintiffs" means Thompson and the *Proctor* Plaintiffs.

x.   "Preliminary Approval" or "Preliminary Approval Order" means the Court's Preliminary Approval Order preliminarily approving the terms and conditions of this Settlement Agreement, including the manner of providing notice to the FLSA Settlement Class Members and the Pennsylvania Settlement Class Members.

y.   "Released Claims" means any and all state, local or federal claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees for alleged unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution or other compensation and relief arising under the FLSA, the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, or Pennsylvania common law or any other wage-related law applicable to the allegations asserted in the Actions against the Releasees and which emanate from and are based upon the same facts set forth in the Actions on behalf of the FLSA Settlement Class Members and Pennsylvania Settlement Class Members (or their agents, successors, assigns, heirs, executors or administrators) with respect to the time that they were employed by Defendant as Solids Control Technicians up to and including June 11, 2011.  However, no Pennsylvania Settlement Class Member, who has not already filed an Opt-In Consent form, shall be deemed to release claims under the FLSA unless he/she returns a timely Claim Form.  Released Claims also includes a general release of all claims, known and unknown, by Thompson, as further described in paragraph 14(a) below.

z.   "Releasees" means Defendant and its past, present and future parent companies, subsidiaries, affiliates, divisions, agents, employees, owners, members, officers, directors, partners, investors, legal representatives, accountants, trustees, executors, administrators, real or alleged alter egos, predecessors, successors, transferees, assigns, and insurers.

aa.   "Settlement Administrator" means Angeion Group, LLC, 1801 Market Street, Suite 660, Philadelphia, PA 19103.

bb.   "Settlement Award" means the payment that each Eligible Class Member shall be entitled to receive pursuant to the terms of the Settlement Agreement.

cc.   "Settlement Notice" means the notice to the FLSA Settlement Class and the Pennsylvania Settlement Class, substantially in the form as Exhibit A attached hereto or as approved by the Court.

## **RELEASES**

14.   **Release**.  It is hereby agreed that in consideration of the benefits to be received by them under this Settlement, that upon entry of a final order approving this Settlement:

6

a.      Named Plaintiff Thompson shall be deemed to have released and forever discharged the Releasees from any and all Released Claims, and also hereby releases, forever discharges, and holds harmless Releasees from any and all claims, demands, rules or regulations, or any other causes of action of whatever nature, whether known or unknown, up to the date of this Settlement Agreement, including but not limited to Title VII of the Civil Rights Act of 1964, as amended; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; The Genetic Information Nondiscrimination Act of 2008 (GINA); The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan); The Civil Rights Act of 1991; The Immigration Reform and Control Act; The Americans with Disabilities Act of 1990; The Family and Medical Leave Act; The Equal Pay Act; Pennsylvania Human Relations Act – 43 P.S. § 951, *et seq.*; the Pennsylvania Minimum Wage Act, as amended – 43 P.S. § 33.101, *et seq.*; the Pennsylvania Whistleblower Law – 43 P.S. § 1421, *et seq.*; the Pennsylvania Equal Pay Law, as amended – 43 P.S. § 336.1, *et seq.*; or any allegation for costs, fees, interest, or other expenses including attorneys' fees incurred in any matter; or any and all claims for bonuses, commissions or any claims for incentive compensation of any type, whether under common law or policy or contract, and any other federal, state or local human rights, civil rights, wage-hour, whistleblower, pension or labor laws, rules and/or regulations, public policy, any and all claims that were asserted or that could have been asserted in the Action, any claim for breach of contract, contract or tort laws, or any claim arising under common law, such as claims for malicious prosecution, misrepresentation, defamation, false imprisonment, libel, slander, invasion of privacy, negligence, claims based on theories of strict liability or *respondeat superior*, infliction of emotional distress, or otherwise, or any other action or grievance against the Releasees, whether individually or collectively, based upon any conduct, up to and including the date of this Settlement Agreement; and

b.      Each FLSA Settlement Class Member and each Pennsylvania Settlement Class Member who is sent the Settlement Notice and who does not timely opt out of the Settlement, shall be deemed to have released and discharged the Releasees from the Released Claims.

15.      Even if Plaintiffs, FLSA Settlement Class Members and/or Pennsylvania Settlement Class Members should hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Claims, upon the Effective Date and completion of payments by Defendant, they shall be deemed to have, by operation of the Court's Final Approval Order, fully, finally and forever settled and released the Released Claims.

16.      Plaintiffs, FLSA Settlement Class Members and Pennsylvania Settlement Class Members agree not to sue or otherwise assert any of the Released Claims against Defendant or the Releasees.

17.      **Release Language on Settlement Checks.** The Settlement Administrator shall include the following release language on the back of each settlement check:

By signing or cashing this check, I affirm my release of Clean Harbors Surface Rentals, USA (f/k/a Peak Energy Services USA, Inc.) and any "Releasees" of the "Released

7

Claims" as those terms are defined in the Settlement Agreement approved by the Court on [*Settlement Administrator will insert the date of order of final approval*] in the lawsuit captioned *Thompson v. Peak Energy Services USA, Inc*., No. 2:13-CV-00266-CRE (W.D. Pa.).  I also affirm that I will not sue or otherwise assert any of the "Released Claims" against any Releasee.

Eligible Class Members have no right or claim to any funds made available under this Settlement Agreement unless and until they sign the back of the settlement check accepting said language affirming the release of their claims as described herein

     18.   **Prior Releases.**  No claim of any Eligible Class Member shall be barred or limited by reason of any release or waiver of any kind previously executed by him or her relating to compensation paid or allegedly owed to such Eligible Class Member by reason of any work performed during the Class Period.  Defendant believes that any such releases and/or waivers executed by former employees are valid and enforceable, and Defendant's agreement as part of this Settlement to allow Eligible Class Member who have previously released or waived claims against the Defendant to make a claim under this Settlement does not affect the validity of any other release or waiver to which Defendant is a party.  Nothing in this paragraph may otherwise be used in any way against Defendant.

## CERTIFICATION, NOTICE OF SETTLEMENT AGREEMENT AND SETTLEMENT IMPLEMENTATION

     19.   The Parties agree to the following procedures for obtaining Preliminary Approval of the Settlement, certifying the Pennsylvania Settlement Class, and notifying the FLSA Settlement Class and the Pennsylvania Settlement Class of this Settlement:

     a.   **Request for Preliminary Approval Order**.  Within five (5) business days after the execution of this Agreement, Plaintiffs will provide Defendants with a proposed draft of the Unopposed Motion for Preliminary Approval of the Settlement Agreement, requesting that the Court preliminarily approve the Settlement, certify the Pennsylvania Settlement Class for settlement purposes only, and set the date for the Final Approval Hearing. Subject to Defendant's approval, Plaintiffs shall file within ten (10) business days after the execution of this Agreement, an Unopposed Motion for Preliminary Approval of the Settlement Agreement.

     b.   **Notice**.  Pursuant to the terms of the Court's Preliminary Approval Order, the Settlement Administrator shall be responsible for preparing, printing and mailing the Settlement Notice to all FLSA and Pennsylvania Settlement Class Members, and the Claim Form to all Pennsylvania Settlement Class Members who are not FLSA Settlement Class Members.

     c.   Within five (5) business days after the Preliminary Approval Order, Class Counsel in cooperation with Defendant's Counsel will provide the Settlement Administrator with a list setting forth the names, last known address, last known telephone number, and dates and number of work weeks that each individual worked for Defendant as a Solids Control Technician during the applicable Class Period for each Class Member.

d.      Within five (5) business days after entry of the Court's Preliminary Approval Order, Defendant shall provide the Class Members' social security numbers to the Settlement Administrator.  The Parties agree that this information shall be utilized solely for the purposes of administering the Settlement, and not for any other purpose.

e.      In order to provide the best notice practicable, the Settlement Administrator will do the following before mailing the Settlement Notice and Claim Form: (i) run the list of FLSA and Pennsylvania Settlement Class Members through the U.S. Postal Service's National Change of Address database ("NCOA"); and (ii) perform address searches using public and proprietary electronic resources which collect their data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed) and credit bureaus.

f.      Within fifteen (15) business days after entry of the Preliminary Approval Order, the Settlement Administrator shall send copies of the Settlement Notice to all FLSA and Pennsylvania Settlement Class Members via U.S. first class mail.  The Settlement Administrator shall include a Claim Form for all Pennsylvania Settlement Class Members who are not members of the FLSA Settlement Class, with an enclosed self-addressed postage prepaid return envelope.

g.      Any Settlement Notice returned to the Settlement Administrator with a forwarding address shall be re-mailed by the Settlement Administrator within three (3) business days following receipt of the returned mail.  If any Settlement Notice is returned to the Settlement Administrator without a forwarding address, the Settlement Administrator shall undertake reasonable efforts such as skip traces to search for the correct address, and shall promptly re-mail the Settlement Notices to any newly found addresses.

h.      No Pennsylvania Settlement Class Member who is not an FLSA Settlement Class Member shall have the right to obtain any payment through this Settlement Agreement unless they submit a completed Claim Form on or before the expiration of the Notice Deadline.

20.    **Objections.**  The Settlement Notice shall provide that Pennsylvania Settlement Class Members or FLSA Settlement Class Members who wish to object to the Settlement must mail a written statement objecting to the Settlement to the Settlement Administrator on or before the Notice Deadline, including their name, address, telephone number, and email address (if applicable).  The postmark date of the mailing shall be the exclusive means for determining that an objection is timely.  The Settlement Administrator shall provide copies of any objections to the Parties' Counsel on a weekly basis.  Persons who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.

21.    **Requests for Exclusion.**  The Settlement Notice shall provide that Pennsylvania Settlement Class Members who wish to exclude themselves from the Settlement ("opt out") must mail to the Settlement Administrator a written statement indicating that they do not wish to participate, or be bound by the Settlement.  The written request for exclusion must contain the Pennsylvania Settlement Class Member's full name, address, and telephone number, and must be

signed individually by the Class Member.  No opt-out request may be made on behalf of a group. Such written statement must be postmarked by the Notice Deadline.  The Settlement Administrator shall provide copies of any requests for exclusion to the Parties' Counsel on a weekly basis.

22.   **Interim Report by the Settlement Agreement**.  No later than five (5) business days after the Notice Deadline, the Settlement Administrator shall provide counsel for the Parties with a declaration setting forth: (a) due diligence and proof of mailing of the Class Notice and Claim Form; (b) the total number of FLSA and Pennsylvania Settlement Class Members who were sent the Class Notice and/or Claim Form; (c) the total number of Pennsylvania Settlement Class Members who returned the Claim Form; and (d) the total number of FLSA Settlement Class Members and Pennsylvania Settlement Class Members who filed timely requests for exclusion or objections to the settlement, along with the complete copies of all requests for exclusion or objections, including their postmark dates.

23.   **Final Approval Hearing.**  Plaintiffs shall request that the Court schedule the Final Approval Hearing to determine final approval of the settlement along with the amounts properly payable for attorneys' fees and costs, and to enter a Final Approval Order:

a.   certifying this Action as a collective action under Section 216(b) of the FLSA and a class action under FED. R. CIV. P. 23;

b.   finally approving the Settlement Agreement and its terms as being a fair, reasonable and adequate settlement of this Action;

c.   directing that the settlement funds, including attorneys' fees and costs, be distributed in accordance with the terms of the Settlement Agreement;

d.   directing that the Action be dismissed with prejudice and in full and final discharge of any and all Released Claims; and

e.   retaining continuing jurisdiction over this Action for purposes of overseeing all settlement administration matters.

## SETTLEMENT FUNDS AND AWARD CALCULATION

24.   **Gross Settlement Amount**.

a.   **Deposit**.  Within five (5) business days after the Effective Date, Defendant shall cause the Gross Settlement Amount to be paid to the Settlement Administrator.  Upon receipt by the Settlement Administrator, these funds shall be transferred immediately to a fund that is intended to satisfy the requirements of Treasury Regulation Section 1.468B-1 as a "Qualified Settlement Fund".  The Settlement Administrator shall provide Defendant with a Section 1.468B-1 Relation Back Election that meets the requirements of Regulation Section 1.468B-1(j)(2) within five (5) business days after receipt of the funds pursuant to the Settlement Agreement.  Defendant shall execute and return such to the Settlement Administrator which shall be affixed to the initial tax return of the Qualified Settlement Fund in order to establish the start

date of the Qualified Settlement Fund.   There shall be no reversion of any portion of the Gross Settlement Amount to Defendant at any time.

b.   **Disbursement by Settlement Administrator**.  All disbursements shall be made from the Qualified Settlement Fund.  The Settlement Administrator shall be the only entity authorized to make withdrawals or payments from the Qualified Settlement Fund.

c.   **Interest**.  The interest on the funds deposited by Defendant will inure *pro rata* to the Party or persons to whom the underlying funds are ultimately paid out.

25.   **Payments**.  Subject to the Court's Final Approval Order, the following amounts shall be paid by the Settlement Administrator from the Gross Settlement Amount:

a.   **Service Award to Named Plaintiff Thompson**. Subject to the Court's approval, Named Plaintiff Thompson shall receive Ten Thousand Dollars ($10,000.00) for his efforts in bringing and prosecuting this matter, and in consideration of his general release set forth above.  The Qualified Settlement Fund shall issue a Form 1099 for these payments.  This payment shall be made within ten business days after the Effective Date.

b.   **Attorneys' Fees and Costs**.

(i)   Subject to the Court's approval, Class Counsel shall receive attorneys' fees in the amount of Six Hundred Thousand Dollars ($600,000.00) (which is one third of the Gross Settlement Amount), which will compensate Class Counsel (including counsel for the *Proctor* Plaintiffs) for all work performed in these Actions as of the date of this Settlement Agreement as well as all of the work remaining to be performed, including but not limited to documenting the Settlement, securing Court approval of the Settlement, making sure that the Settlement is fairly administered and implemented, and obtaining final dismissal of the Actions.  In addition, Class Counsel shall receive reimbursement of their out-of-pocket costs approved by the Court.  These payments of attorneys' fees and costs shall be made within seven (7) business days after the Effective Date.

(ii)   The attorneys' fees and costs paid by Defendant pursuant to this Agreement shall constitute full satisfaction of Defendant's obligations to pay amounts to any person, attorney or law firm for attorneys' fees or costs in these Actions on behalf of the Plaintiffs and/or any FLSA or Pennsylvania Settlement Class Member, and shall relieve Defendant from any other claims or liability to any other attorney or law firm for any attorneys' fees or costs to which any of them may claim to be entitled on behalf of the Plaintiffs or any FLSA or Pennsylvania Settlement Class Member.

(iii)   A Form 1099 shall be provided to Class Counsel for the payments made to Class Counsel.  Each firm constituting Class Counsel shall be solely and legally responsible to pay any and all applicable taxes on the payment made to that firm.

c.   **Settlement Administration Costs**.  Settlement Administration costs shall not exceed Fifteen Thousand Five Hundred Dollars ($15,500.00), and shall be paid from the

Gross Settlement Amount.  A copy of the Settlement Administrator's invoice shall be provided to the Court with Plaintiffs' Motion for Final Approval of Class Action Settlement.  The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration of the Settlement.

       d.    **Settlement Awards to Eligible Class Members.**  Settlement Awards shall be made to Eligible Class Members as explained below in paragraphs 26-29 below.

## CALCULATION AND DISTRIBUTION OF SETTLEMENT AWARDS

26.    **Settlement Award Eligibility**.  All Eligible Class Members (including Plaintiff Thompson and the *Proctor* Plaintiffs) shall be paid a Settlement Award from the Net Settlement Amount.  The Settlement Administrator shall be responsible for determining eligibility for, and the amount of, the Settlement Awards to be paid to Eligible Class Members.   All FLSA Settlement Class Members are automatically eligible to receive a Settlement Award because they have already affirmatively opted in and joined the litigation by returning their Opt-In Consent Form.  All Pennsylvania Settlement Class Members who submit a valid and timely Claim Form will be eligible to receive a Settlement Award.  Once an individual qualifies as an Eligible Class Member, he/she shall be entitled to recover only a single Settlement Award and shall not receive a double recovery as a member of both the FLSA Settlement Class and the Pennsylvania Settlement Class.

27.    The Settlement Administrator will calculate an award for each FLSA Settlement Class Member based on the total number of weeks that the respective FLSA Settlement Class Member worked as a Solids Control Technician for Defendant during the FLSA Class Period.

28.    The Settlement Administrator will calculate an award for each Pennsylvania Settlement Class Members who is not also an FLSA Settlement Class Member, who submits a valid and timely Claim Form, based on the total number of weeks that the respective Pennsylvania Settlement Class Member worked for Defendant as a Solids Control Technician during the Pennsylvania Class Period.  The award of an FLSA Settlement Class Member who is also a Pennsylvania Settlement Class Member shall be calculated based on the longer of the two Class Periods.

29.    Each week shall equal one settlement share, and the total number of settlement shares for all Eligible Class Members will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure.  That figure will then be multiplied by each Eligible Class Member's number of settlement shares to determine the Eligible Class Member's Settlement Award.  Each Eligible Class Member will receive a minimum amount of $250, regardless of the number of settlement shares allocated to that Eligible Class Member.  All Settlement Award determinations shall be based on Defendant's payroll and timekeeping data, which Defendant shall make available to the Settlement Administrator and Class Counsel.

30.    The Parties agree that fifty percent (50%) of each Settlement Award shall be treated as back wages paid by Defendant.  Accordingly, on each Settlement Award, the Settlement Administrator shall effectuate federal and applicable state income and employment

tax withholding as required by law with respect to fifty percent (50%) of each Settlement Award distributed, and Defendant shall pay the employer's share of all required FICA and FUTA taxes on such amounts.  Defendant shall pay these taxes, which amounts shall be deposited into the Qualified Settlement Fund after the Settlement Awards are mailed to Eligible Class Members on the date specified in this Agreement, in addition to the Gross Settlement Amount.  Amounts withheld will be remitted by the Settlement Administrator from the Qualified Settlement Fund to the appropriate governmental authorities.  The remaining fifty percent (50%) of each Settlement Award shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099, and shall not be subject to FICA and FUTA withholding taxes.  Defendant shall cooperate with the Settlement Administrator to provide payroll tax information as necessary to accomplish the income and employment tax withholding on the wage portion of each Settlement Award, and the Form 1099 reporting for the non-wage portion of each Settlement Award.

31.     The Settlement Administrator shall provide counsel for all Parties with copies of all completed Claim Forms and a final report of all Settlement Awards, at least ten (10) business days before the Settlement Awards are mailed.

32.     The Settlement Administrator shall pay Settlement Awards to Eligible Class Members within fifteen (15) business days after the Effective Date.   The Settlement Administrator shall then provide a written certification of such payments to counsel for the Parties.

33.     All Settlement Award checks shall remain valid and negotiable for one hundred eighty (180) days from the date of their issuance and may thereafter automatically be canceled if not cashed within that time, at which time the right to recover any Settlement Award will be deemed void and of no further force and effect.  All funds from checks not cashed will revert to the Qualified Settlement Fund.  The Settlement Administrator will include with the checks a letter stating that the check must be cashed or deposited within 180 days or it will be cancelled.

34.     **Remaining Monies**.  If at the conclusion of the 180-day check void period set forth in Paragraph 33 above, there are any monies remaining in the Qualified Settlement Fund, those monies shall be paid to a *cy pres* recipient, Metropolitan Area Neighborhood Nutrition Alliance (MANNA), a non-profit organization, or any such organization approved by the Court. Defendant reserves the right not to have its name associated with any *cy pres* award.

35.     **No Claim Based Upon Distributions or Payments in Accordance with this Settlement Agreement**.  No person shall have any claim against Defendant or any of the Releaseees, the Plaintiffs, the FLSA and Pennsylvania Settlement Class Members, Class Counsel, Defendant's Counsel or the Settlement Administrator based on distributions or payments made in accordance with this Settlement Agreement.

## MISCELLANEOUS

36.     **Defendant's Legal Fees.**  All of Defendant's own legal fees, costs, and expenses in this Action shall be borne by Defendant.

37.     **Nullification of the Settlement Agreement.**  In the event: (a) the Court does not

preliminarily approve the Settlement Agreement as provided herein; (b) the Court does not finally approve the Settlement Agreement as provided herein; or (c) the Settlement Agreement does not become final for any other reason, this Settlement Agreement shall be null and void and any order or judgment entered by the Court in furtherance of this Settlement Agreement shall be treated as withdrawn or vacated by stipulation of the Parties. In such case, the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Settlement Agreement, and the Parties shall proceed in all respects as if it had not been executed, except that Defendant agrees to pay to the Settlement Administrator the costs necessary to effectuate the notice process, if any, up to Five Hundred Dollars ($500.00). In the event an appeal is filed from the Settlement Agreement, or any other appellate review is sought prior to the Effective Date, administration of the Settlement may be stayed pending final resolution of the appeal or other appellate review.

38.  **Inadmissibility of Settlement Agreement.** Except for purposes of settling this Action pursuant to the terms of this Settlement Agreement, neither this Settlement, nor any of its terms, nor any document, statement, proceeding or conduct related to this Settlement Agreement, nor any reports or accounts thereof, shall in any event be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession or damage.

39.  **Computation of Time.** For purposes of this Settlement Agreement, if the prescribed time period in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by FED. R. CIV. P. 6(a)(6)), such time period shall be continued to the following business day.

40.  **Exhibits and Headings.** This Settlement Agreement includes both the terms set forth in this Settlement Agreement herein and the attached Exhibits, which are incorporated by reference as though fully set forth herein. All exhibits to this Settlement Agreement are an integral part of the Settlement. The descriptive headings of any paragraphs or sections of this Settlement Agreement are inserted for convenience of reference only and do not constitute a part of this Settlement Agreement.

41.  **Interim Stay of Proceedings.** The Parties agree to hold in abeyance all proceedings in the Action, except such proceedings necessary to implement and complete the settlement and execute the Settlement Agreement.

42.  **Amendment or Modification.** This Settlement Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest.

43.  **Entire Settlement Agreement.** This Settlement Agreement and the attached exhibits constitute the entire agreement among the Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. All prior or contemporaneous negotiations, memoranda, agreements, understandings, and representations, whether written or oral, are expressly

14

superseded hereby and are of no further force and effect.  Each of the Parties acknowledges that they have not relied on any promise, representation or warranty, express or implied, not contained in this Settlement Agreement.

44.     **Authorization to Enter Into Settlement Agreement.**  Counsel for all Parties are expressly authorized by the Parties whom they represent to enter into this Settlement Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Settlement Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Settlement Agreement.  The Parties and their counsel shall cooperate with each other and use their best efforts to effect the implementation of the Settlement.  In the event the Parties are unable to reach resolution on the form or content of any document needed to implement the Settlement Agreement, or on any supplemental provisions or actions that may become necessary to effectuate the terms of this Settlement Agreement, the Parties shall seek the assistance of the Court to resolve such disagreement.

45.     **Binding on Successors and Assigns.**  This Settlement Agreement shall be binding upon, and inure to the benefit of Plaintiffs, Defendant, the FLSA Settlement Class Members and the Pennsylvania Settlement Class Members and their heirs, beneficiaries, executors, administrators, successors, transferees, successors, assigns, or any corporation or any entity with which any party may merge, consolidate or reorganize.

46.     **Governing Law.**  This Settlement Agreement shall be governed by and interpreted according to the Federal Rules of Civil Procedure, where applicable, or the laws of the Commonwealth of Pennsylvania, without regard to its principles of conflict of laws.

47.     **Counterparts.**  This Settlement Agreement may be executed in one or more counterparts, including by facsimile or email.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

48.     **Cooperation and Drafting.**  Each of the Parties has cooperated in the drafting and preparation of this Settlement Agreement; hence the drafting of this Settlement Agreement shall not be construed against any of the Parties.  The Parties agree that the terms and conditions of this Agreement were negotiated at arm's length and in good faith by the Parties, and reflect a Settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

49.     **Jurisdiction of the Court.**  Any dispute regarding the interpretation or validity of or otherwise arising out of this Settlement Agreement, or relating to the Action or the Released Claims, shall be subject to the exclusive jurisdiction of the Court.  The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Settlement Agreement and all orders and judgments entered in connection therewith, and the Parties and their Counsel submit to the jurisdiction of the Court for purposes of interpreting, implementing, and enforcing the settlement embodied in this Settlement Agreement and all orders and judgments entered in connection therewith.

50.     **CAFA Notice.**  Pursuant to the requirements of the Class Action Fairness Act, 28 U.S.C. §1715, Defendant shall notify the appropriate governmental authorities, including, but not

limited to, the attorneys general of the United States and Pennsylvania. Defendant also agrees to provide the CAFA Notice to Class Counsel. The Parties agree that CAFA Notice must be provided 90 days prior to the Final Approval Hearing. The Parties agree to schedule dates and deadlines in this Agreement so as to insure that CAFA notice is provided within this deadline.

     51.    **Plaintiffs' Waiver of Right to Object.**  By signing this Settlement Agreement, the Plaintiffs agree to be bound by the terms herein and further agree not to object to any of the terms of this Settlement Agreement.

     52.    **Press Coverage.**  Class Counsel agree that they will not: (i) issue any press release relating to the Settlement; or (ii) initiate or seek press coverage of the Settlement.

     IN WITNESS WHEREOF, the Parties and their Counsel have executed this Settlement Agreement as follows:

**PLAINTIFF:**        _____     Date: 7-16-14
                      Christopher Lynn Thompson

**CLASS**
**COUNSEL:**       _____     Date: 7/21/14
                      Shanon J. Carson
                      Sarah R. Schalman-Bergen
                      BERGER & MONTAGUE, P.C.
                      1622 Locust Street
                      Philadelphia, PA 19103

                      and

                      David A. Hughes (ASB-3923-U82D)
                      *(pro hac vice)*
                      HARDIN & HUGHES, LLP
                      2121 14th Street
                      Tuscaloosa, AL 35401

**PLAINTIFF:** _____   Date: 7-16-14
Robert Proctor

**PLAINTIFF:** _____   Date: _____
Dennis Proctor

**PLAINTIFF:** _____   Date: _____
Allan Hackett, Sr.

**PLAINTIFF:** _____   Date: _____
Jake Wilson

***PROCTOR* PLAINTIFFS'**
**COUNSEL:** _____   Date: _____
Pete Winebrake
Mark Gottesfeld
Winebrake & Santillo, LLC
(formerly The Winebrake Law Firm, LLC)
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025

17

PLAINTIFF:     _____     Date: _____
               Robert Proctor

PLAINTIFF:     _____     Date: 7-16-14
               Dennis Proctor

PLAINTIFF:     _____     Date: _____
               Allan Hackett, Sr.

PLAINTIFF:     _____     Date: _____
               Jake Wilson

*PROCTOR* PLAINTIFFS'
COUNSEL:       _____     Date: _____
               Pete Winebrake
               Mark Gottesfeld
               Winebrake & Santillo, LLC
               (formerly The Winebrake Law Firm, LLC)
               Twining Office Center, Suite 211
               715 Twining Road
               Dresher, PA  19025

**PLAINTIFF:** _____     Date: _____
                Robert Proctor

**PLAINTIFF:** _____     Date: _____
                Dennis Proctor

**PLAINTIFF:** _____     Date: 7-16-14
                Allan Hackett, Sr.

**PLAINTIFF:** _____     Date: _____
                Jake Wilson


*PROCTOR* **PLAINTIFFS'**
**COUNSEL:**   _____     Date: _____
                Pete Winebrake
                Mark Gottesfeld
                Winebrake & Santillo, LLC
                (formerly The Winebrake Law Firm, LLC)
                Twining Office Center, Suite 211
                715 Twining Road
                Dresher, PA  19025

17

**PLAINTIFF:** _____     Date: _____
                  Robert Proctor

**PLAINTIFF:** _____     Date: _____
                  Dennis Proctor

**PLAINTIFF:** _____     Date: _____
                  Allan Hackett, Sr.

**PLAINTIFF:** _____     Date: 7-21-14
                  Jake Wilson

***PROCTOR* PLAINTIFFS'**
**COUNSEL:** _____     Date: _____
                  Pete Winebrake
                  Mark Gottesfeld
                  Winebrake & Santillo, LLC
                  (formerly The Winebrake Law Firm, LLC)
                  Twining Office Center, Suite 211
                  715 Twining Road
                  Dresher, PA  19025

17

**PLAINTIFF:**   _____   Date: _____
                  Robert Proctor

**PLAINTIFF:**   _____   Date: _____
                  Dennis Proctor

**PLAINTIFF:**   _____   Date: _____
                  Allan Hackett, Sr.

**PLAINTIFF:**   _____   Date: _____
                  Jake Wilson

***PROCTOR* PLAINTIFFS'**   _____   Date: 7/17/14
**COUNSEL:**
                  Pete Winebrake
                  Mark Gottesfeld
                  Winebrake & Santillo, LLC
                  (formerly The Winebrake Law Firm, LLC)
                  Twining Office Center, Suite 211
                  715 Twining Road
                  Dresher, PA  19025

**DEFENDANT:**            Date: 7/18/14

Clean Harbors Surface Rentals, USA
By:      James M. Rutledge
         Vice Chairman, President and Chief Financial Officer
         Clean Harbors, Inc.

**DEFENDANT'S
COUNSEL:**                                        Date: _____

William J. Anthony (*pro hac vice*)
New York Registration No. 5064092
Kevin M. Sibbernsen (*pro hac vice*)
Craig W. Snethen
Pa I.D. No. 86050
JACKSON LEWIS P.C.
snethenc@jacksonlewis.com
One PPG Place, 28th Floor
Pittsburgh, PA 15222

18

**DEFENDANT:** _____     Date: _____
Clean Harbors Surface Rentals, USA
By:     James M. Rutledge
Vice Chairman, President and Chief Financial Officer
Clean Harbors, Inc.

**DEFENDANT'S**
**COUNSEL:**
_____     Date: 7/23/2014
William J. Anthony (*pro hac vice*)
New York Registration No. 5064092
Kevin M. Sibbernsen (*pro hac vice*)
Craig W. Snethen
Pa I.D. No. 86050
JACKSON LEWIS P.C.
snethenc@jacksonlewis.com
One PPG Place, 28th Floor
Pittsburgh, PA 15222

# **EXHIBIT A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| **CHRISTOPHER LYNN THOMPSON,** | : | **Civil Action No.: 2:13-cv-00266-CRE** |
| **individually and on behalf of all persons** | : | |
| **similarly situated,** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| **PEAK ENERGY SERVICES USA, INC.** | : | |
| | : | |
| **Defendant.** | : | |

### NOTICE OF FAIR LABOR STANDARDS ACT ("FLSA")
### COLLECTIVE AND CLASS ACTION SETTLEMENT

TO:   [Class Member Name]
       [Address]
       [Address]
       [Last Four Digits of Social Security No.]

### PLEASE READ THIS NOTICE CAREFULLY.

**You received this Notice because you already joined this lawsuit as an Opt-In Plaintiff (*i.e.*, you are an FLSA Class Member), or because the records of Peak Energy Services USA, Inc ("Peak") indicate that you were employed by Peak as a Solids Control Technician in the Commonwealth of Pennsylvania between February 20, 2009 and June 10, 2011. If you fit this definition, you are entitled to receive money from a Settlement in this case, as described below.**

All questions or inquiries regarding this Notice and/or Settlement should be directed to Class Counsel, Sarah R. Schalman-Bergen of Berger & Montague, P.C., 1622 Locust Street Philadelphia, PA 19103, Telephone: (215) 875-3000, Email: sschalmanbergen@bm.net.

| 1. | **Why Should You Read This Notice?** |
|---|---|

This Notice explains your right to share in the monetary proceeds of this Settlement, exclude yourself ("opt-out") of the Settlement if you are a Pennsylvania Settlement Class Member, or object to the Settlement. The United States District Court for the Western District of Pennsylvania has preliminarily approved the Settlement as fair and reasonable. The Court will hold a Final Approval Hearing on _____, 2014 at _____, before the Honorable Magistrate Judge Cynthia R. Eddy of the United States District Court for the Western District of Pennsylvania, located at 700 Grant Street, Pittsburgh, PA 15219.

**2.      What Is This Case About?  Description of the Lawsuit.**

This lawsuit alleges that in violation of federal and Pennsylvania state laws, Solids Control Technicians employed by Peak were not paid all overtime compensation and other forms of compensation to which they were entitled under the law and seeks to recover damages from Peak for these alleged damages, as well as liquidated damages, attorneys' fees, and costs.

Peak denies Plaintiffs' claims and has raised various factual and legal defenses to those claims and has agreed to the Settlement without any admission of wrongdoing.

On _____ __, 2014, the Court preliminarily approved the Settlement as fair and reasonable and authorized that this Notice be sent to you.

**3.      How Much Can I Expect To Receive?**

Peak has agreed to pay One Million, Eight Hundred Thousand Dollars ($1,800,000.00) to settle the Lawsuit.  Deductions from this amount will be made for attorneys' fees and costs for Class Counsel (see below), settlement administration costs not to exceed $15,500.00, and a service award of $10,000.00 to the Named Plaintiff (Christopher Lynn Thompson) for his service to the Class.  After deductions of these amounts, what remains of the Settlement (the "Net Settlement Amount") will be available to pay monetary Settlement Awards to persons who returned an Opt-In Consent Form or Claim Form (collectively, "Eligible Class Members").

According to records maintained by Peak, your total estimated settlement payment (assuming you have either already filed an Opt-In Consent Form to join this case or properly complete and return the enclosed Claim Form by the deadline) will be between $[minimum amount] and $[maximum amount] (less applicable taxes and withholding), depending on the number of individuals who elect to participate in this settlement.  This amount is an estimated range, and your final settlement payment is expected to differ from this amount and will be calculated as set forth below.

Each Eligible Class Member's share of the Net Settlement Amount will be determined based on the total number of weeks that the Eligible Class Member worked for Peak during a specified time period.  If you are an FLSA Class Member, your award will be based on the total number of weeks that you worked for Peak during the time period between 1) the later of (i) February 20, 2010 or (ii) 3 years and 147 days (1242 days) before the date your Opt-In Consent Form was filed with the Court, and 2) June 10, 2011.  If you are a Pennsylvania Class Member, your award will be based on the total number of weeks you worked for Peak between February 20, 2009 and June 10, 2011.  Each week will equal one settlement share, and the total number of settlement shares for all Eligible Class Members will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure.  That figure will then be multiplied by each Eligible Class Member's number of settlement shares to determine the Eligible Class Member's Settlement Award.  Each Eligible Class Member will receive a minimum amount of $250, regardless of the number of settlement shares allocated to that Eligible Class Member.

All Settlement Award determinations will be based on Peak's personnel and payroll records.  All valid and timely claims will be paid from the Net Settlement Amount.  The Settlement Administrator will deduct applicable employee payroll taxes and withholdings from the Settlement Awards.

If you receive a Settlement Award, you will have 180 days to cash the check that will be sent to you by the Settlement Administrator.  If you do not cash your check within this time period, your check will become void.

**NOTE: YOU WILL ONLY GET MONEY FROM THE SETTLEMENT IF YOU PREVIOUSLY SIGNED AND RETURNED AN OPT-IN CONSENT FORM OR IF YOU NOW SUBMIT A VALID AND TIMELY CLASS MEMBER CLAIM AND OPT-IN FORM.**

**It is your responsibility to ensure that the Settlement Administrator has timely received your claim.  You may contact the Settlement Administrator at the toll-free number listed below to ensure that your claim has been received.  It is also your responsibility to keep a current address on file with the Settlement Administrator to ensure receipt of your monetary Settlement Award.  If you fail to keep your address current, you may not receive your Settlement Award.**

| 4. | **What Are My Rights?** |
|----|----|

- If you already opted into the Lawsuit at an earlier date (*i.e.*, you are a member of the FLSA Class), you will **automatically** get money from the Settlement.  Specifically, if you previously filled out and returned an Opt-In Consent Form, then **you do not have to do anything to receive your share of the settlement proceeds, and there is no Claim Form enclosed because you are already recognized as having made a claim.**

- If you are a member of the Pennsylvania Settlement Class and you did not previously fill out and return an Opt-In Consent Form, **then you will only get money from the Settlement if you now fill out and mail the enclosed Claim and Form to the Settlement Administrator postmarked by [INSERT] (45 days from the date this Notice was mailed) at**: Attn: Peak Overtime Settlement, [INSERT SETTLEMENT ADMIN INFO].

- If you are a member of the Pennsylvania Settlement Class and you do not wish to be bound by the Settlement, you must submit a written exclusion from the settlement ("opt-out"), postmarked by [INSERT] (45 days from the date this Notice was mailed).  The written request for exclusion from the settlement must contain your full name, address, and telephone number, and must be signed individually by you.  No opt-out request may be made on behalf of a group.  The opt-out request must be sent by mail to the Settlement Administrator at: [INSERT SETTLEMENT ADMIN INFO].  **Any person who requests exclusion (opts out) of the settlement will not be entitled to any Settlement Award and will not be bound by the Settlement Agreement or have any right to object, appeal or comment thereon**.

- If you received this Notice, and you wish to object to the Settlement, you must submit an objection, postmarked by [INSERT] (45 days from the date this Notice was mailed), stating why you object to the settlement.  Your objection must state your full name, address, telephone number, and email address (if applicable) and must be signed by you.  Any objection should be mailed to the Settlement Administrator at: [INSERT SETTLEMENT ADMIN INFO].  If you submit a written objection, you may also, if you wish, appear at the Final Approval Hearing set for [INSERT] at [INSERT] before the Honorable Magistrate Judge Eddy of the United States District Court for the Western District of Pennsylvania located at 700 Grant Street, Pittsburgh, PA 15219, to discuss your objection with the Court and the parties to the Lawsuit.

If the proposed Settlement is approved by the Court at the Final Approval Hearing, and you do not exclude yourself from the Settlement as discussed above, a Judgment will be entered by the Court that will dismiss your "Released Claims" against Defendant and its past, present and future parent companies, subsidiaries, affiliates, divisions, agents, employees, owners, members, officers, directors, partners, investors, legal representatives, accountants, trustees, executors, administrators, real or alleged alter egos, predecessors, successors, transferees, assigns, and insurers ("Releasees"), as defined below:

> any and all state, local or federal claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees for alleged unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution or other compensation and relief arising under the FLSA, the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, or Pennsylvania common law or any other wage-related law applicable to the allegations asserted in the Actions against the Releasees and which emanate from and are based upon the same facts set forth in the Actions on behalf of the FLSA Settlement Class Members and Pennsylvania Settlement Class Members (or their agents, successors, assigns, heirs, executors or administrators) with respect to the time that they were employed by Defendant as Solids Control Technicians up to and including June 11, 2011.  However, no Pennsylvania Settlement Class Member, who has not already filed an Opt-In Consent form, shall be deemed to release claims under the FLSA unless he or she returns a timely Claim Form.

The Judgment will resolve the "Released Claims" to the extent provided in the Settlement Agreement and will permanently bar all Pennsylvania Settlement Class Members from prosecuting any and all such Pennsylvania claims against Defendant.  However, if you did not previously submit an Opt-In Consent Form and you do not now submit a Claim Form, then any and all claims that you may have under the Fair Labor Standards Act are not released.

4

**5.      Can Defendant Retaliate Against Me for Participating in this Lawsuit?**

No.  If you are a current employee of Peak (or any successor of Peak, including Clean Harbors Surface Rental, USA), your decision as to whether or not to participate in this Lawsuit will in no way affect your employment with Peak.  It is illegal for Peak to take any adverse employment action against you as a result of your participating in this Lawsuit.  In fact, Peak encourages you to participate in this settlement and receive your share of the monetary proceeds.

**6.      Who Are the Attorneys Representing Plaintiff and the Class?**

Plaintiff and the Class are represented by the following attorneys:

Shanon J. Carson                             David A. Hughes, Esq.
Sarah R. Schalman-Bergen              **HARDIN & HUGHES, LLP**
**BERGER & MONTAGUE, P.C.**     2121 14th Street
1622 Locust Street                           Tuscaloosa, AL 35401
Philadelphia, Philadelphia 19103      Telephone: (205) 344-6690
Telephone: (215) 875-3000               Facsimile: (205) 344-6188
Facsimile: (215) 875-4604               Email: dhughes@hardinhughes.com
Email: sschalman-bergen@bm.net
Website: www.bergermontague.com

**7.      How Will the Attorneys for the Class Be Paid?**

Class Counsel will be paid from the settlement amount of $1,800,000.00.  You do not have to pay the attorneys who represent the Class separately.  The Settlement Agreement provides that Class Counsel will receive attorneys' fees of up to one-third (1/3) of the settlement ($600,000.00), plus their out-of-pocket costs, which are presently $39,325.00.  Class Counsel will file with the Court a Motion for Attorneys' Fees and Costs.  The actual amount awarded will be determined by the Court.  The Court will hold a hearing on that Motion on the same day as the Final Settlement Fairness Hearing, on [INSERT] at [INSERT].

**8.      Additional Information**

**IF YOU NEED MORE INFORMATION OR HAVE ANY QUESTIONS**, you may contact Class Counsel as listed above or the Settlement Administrator at the toll-free telephone number listed or by email listed below.  Please refer to the Peak Overtime Settlement.

Attn: Peak Overtime Settlement
Angeion Group, LLC,
1801 Market Street, Suite 660
Philadelphia, PA 19103
Toll-Free Telephone Number:  _____
Facsimile Number: _____
Email Address: _____

This Notice only summarizes the Lawsuit, the Settlement and related matters.  For more information, you may inspect the Court files at the Office of the Clerk, United States District Court located at 700 Grant Street, Pittsburgh, PA 15219, from 9:00 a.m. to 5:00 p.m., Monday through Friday.  **PLEASE DO NOT TELEPHONE THE COURT FOR INFORMATION ABOUT THIS SETTLEMENT OR THE CLAIMS PROCESS.**

Dated: June __, 2014

# **<u>EXHIBIT B</u>**

**Must be Postmarked No Later Than _____, 2014**

**MAIL TO:**
Attn: Peak Overtime Settlement
Angeion Group, LLC,
1801 Market Street, Suite 660
Philadelphia, PA 19103
Toll-Free Telephone Number:  _____
Facsimile Number: _____
Email Address: _____

## CLAIM AND OPT-IN FORM

**CLAIMANT INFORMATION:**
[INSERT CLAIMANT NAME AND ADDRESS]

Claim No.:
If different than the preprinted data to the left, please
print your correct legal name, current address and Social
Security Number here:

Telephone No.:
Email Address:

Social Security No.: xxx-xx-[ INSERT]

*Thompson v. Peak Energy Services USA, Inc.*
Case No. 2:13-cv-00266-CRE (W.D. Pa.)

**TO SHARE IN THE MONETARY RECOVERY FOR THE PEAK OVERTIME
SETTLEMENT, YOU MUST COMPLETE, SIGN AND RETURN THIS CLAIM AND
OPT-IN FORM AND IT MUST BE POSTMARKED BY _____, 2014.**

If your address changes, you must send the Settlement Administrator your new address.  It is
your responsibility to keep your address on file and up-to-date with the Settlement Administrator
so that you can be sure to receive your monetary settlement award.

By signing below, I certify that I was employed by Peak Energy Services USA, Inc. as a Solids
Control Technician between **February 20, 2009 and June 10, 2011**; that my name, address,
telephone number and Social Security Number or Tax Identification Number written above are
correct; and that all other information that I have provided in this document is correct.

I also hereby consent and agree to join this lawsuit, and I hereby opt in to become a plaintiff in
this lawsuit and consent to be bound by the collective action settlement, including of all
"Released Claims" as set forth in the NOTICE OF FLSA COLLECTIVE AND CLASS
ACTION SETTLEMENT AND SETTLEMENT HEARING.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing
statements are true and correct.

Date:_____        _____
                                                            Signature